UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL LOUKAS et al.,

        Plaintiffs,                     Case No. 1:11-cv-1063

v.                                                 Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

**OPINION**

        This is a civil action brought by two state prisoners under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiffs' action will be dismissed because Plaintiffs fail to state a claim upon which relief may be granted under federal law, and because several of the Defendants are protected by Eleventh Amendment immunity in any event.

**Factual Allegations**

Plaintiffs are incarcerated at the Carson City Correctional Facility. In their *pro se* complaint, Plaintiffs sue the Michigan Department of Corrections (MDOC); the Michigan Department of Technology Management and Budget (DTMB); MDOC Administrative Assistants Cheryl Groves, Larry Brown and Edward Mize; DTMB employee Steven Motz; Public Communications Service, Inc. (PCS); PCS employee Chris Moore; Shawn Tech Communications, Inc. (STCI); and STCI CEO Lance Fancher.

Plaintiffs allege that Defendants engaged in a pattern of racketeering activity with regard to prisoner telephone service in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*. Plaintiffs assert that the MDOC first engaged in an illegal phone contract scheme with Sprint-Embarq phone company that resulted in an increase from three cents per minute to eighty-nine cents per minute plus a $3.99 surcharge to connect the call. The MDOC allegedly received a percentage of the funds that exceeded the three cent per minute rate as a kickback from the phone company. Plaintiffs allege that the Michigan Legislature passed a bill in August 2008 banning such kickbacks. As a result of the legislation, prison phone rates were significantly reduced and did not include a surcharge to connect the call. Plaintiffs claim that the MDOC ignored the senate bill when they entered into a phone contract with PCS and STCI on February 9, 2011. While the base phone rate remained four cents per minute, the contract allowed PCS to charge an additional eighteen to twenty-two cents per minute for contribution to a Special Equipment Fund managed by the MDOC. According to Plaintiffs, PCS pays seventy percent of the charges collected over the four cent per minute rate into the Fund. In exchange for the kickback, the PCS retains the remaining thirty percent of the phone charges over the four cent per minute rate.

Plaintiffs maintain that Defendants' conduct constitutes illegal money laundering and wire fraud. In addition to their RICO claim, Plaintiffs assert violations of MDOC rules, regulations and policy directives, which are promulgated through the Administrative Procedures Act, MICH. COMP. LAWS § 24.271 *et seq*.

Plaintiffs seek injunctive relief as well as monetary damages.

## Discussion

### I. Request for Class Certification

Plaintiffs have titled their complaint as a class action, which the Court construes as a request for class certification. For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v. Campbell*, No. 98-6156, 1999 WL 777435, at *1 (6th Cir. Sept. 21, 1999); *Marr v. Mich.*, No. 95-1794, 1996 WL 205582, at * 1 (6th Cir. Apr. 25, 1996). Accordingly, because Plaintiffs are incarcerated, *pro se* litigants, the Court finds that they are not appropriate representatives of a class. Therefore, the Court will deny Plaintiffs' request for class certification.

### II. Immunity

Plaintiffs may not maintain an action against the MDOC or the DTMB. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh

Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not indicated its intent to abrogate state sovereign immunity under RICO, *Chaz Const., LLC v. Codell*, 137 F. App'x 735, 743-45 (6th Cir. 2005), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). As a department of the state, the DTMB also is immune. In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court will dismiss the MDOC and the DTMB.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

Plaintiffs only identified federal claim is under RICO. Plaintiffs allege that Defendants engaged in a pattern of racketeering activity with regard to prisoner telephone service in violation of RICO. Section 1964(c) of RICO, the provision upon which Plaintiffs' claim is founded, provides for a private cause of action:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c)(1982) (emphasis added). Section 1962 makes it illegal to engage in a pattern of racketeering activity. 18 U.S.C. § 1962(c)(1982). "Racketeering activity" is defined in section 1961(1) in terms of a long list of federal and state crimes, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. A "pattern of racketeering activity" requires at least two acts of

racketeering activity within a ten year period, 18 U.S.C. 1961(5), generally referred to as the "predicate acts" or "predicate offenses" underlying the RICO claim.

The Sixth Circuit and other federal courts consistently have rejected RICO claims concerning prison conditions. *See, e.g.*, *Hyland v. Martin*, No. 00-1269, 2000 WL 1647952, at *1 (6th Cir. Oct. 25, 2000) (affirming dismissal of prisoner RICO conspiracy claim regarding restrictions imposed on photocopying credit card); *see also Jenkins v. C.S.C./C.C.C.F. Corr. Services Corp.*, No. 99-1518, 2000 WL 1179772, at *1 (10th Cir. Aug. 21, 2000) (dismissing prisoner RICO claim alleging embezzlement from inmate accounts); *Petersen v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (affirming dismissal of RICO claims alleging warden accepted bribes from prison food services company); *Taylor v. Ornoski*, 2006 WL 1646148 (N.D. Cal. June 14, 2006) (dismissing prisoner RICO claims seeking to challenge regulations restricting vendors who provide telephone service to inmates). In *Ziegler v. McGinnis*, 32 F. App'x 697 (6th Cir. 2002), the Sixth Circuit rejected claims brought by state prisoners under § 1983 and RICO concerning the MDOC telephone policy. The court held that the prisoners had no RICO claim based upon the MDOC's telephone policy because they did not allege injury to business or property, a requirement under § 1964(c). *Id.* at 699.

Plaintiffs' conclusory allegations of wire fraud, money laundering and illegal kickbacks fail to establish predicate acts upon which to base a RICO claim. *See Iqbal*, 129 S. Ct. at 1949-50. Indeed, it would appear from the allegations that the telephone charges and flow of funds are fully disclosed. Plaintiffs' simply do not like the charges, and also believe they relate to state laws that do not in themselves amount to "racketeering activity" under RICO. Moreover, Plaintiffs' RICO claim fails to state a claim for relief because they cannot demonstrate any injury to business or property, which is a prerequisite to a successful civil RICO claim. *See* 18 U.S.C.

§ 1964(c); *Ziegler*, 32 F. App'x at 699; *see also Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *Looper v. Gibson*, 63 F. App'x 877, 878 (6th Cir. 2003).  Accordingly, Plaintiffs' RICO claim will be dismissed.

To the extent Plaintiffs allege that the phone contract between the MDOC, PCS and STCI violates state law and MDOC rules, regulations and policy directives, they fail to state a claim upon which relief may be granted under federal law.  The claimed violations of state law do not amount to "racketeering activity" under RICO.  And to the extent Plaintiffs would seek to invoke § 1983, they could not:  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).

Finally, to the extent Plaintiffs seek to invoke this Court's supplemental jurisdiction over the state-law claim, the Court declines to exercise jurisdiction.  The Sixth Circuit routinely has held that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits.  *Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)).  Plaintiffs' state-law claims therefore will be dismissed without prejudice.

IV.     Motion for Preliminary Injunction

Plaintiffs bring a motion for preliminary injunction prohibiting Defendants from charging Plaintiffs in excess of the 3 1/2 cent per minute rate stated in the phone contract, freezing the Special Equipment Fund and prohibiting kickbacks in connection with telephone services (docket #2). Because the Court will dismiss Plaintiffs' action for failure to state a claim, Plaintiffs' motion will be denied as moot.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiffs' action will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), because Plaintiffs fail to state a claim upon which relief may be granted, and because some Defendants are immune in any event. Consequently, Plaintiffs' motion for preliminary injunction will be denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiffs appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff are barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If they are barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:    February 17, 2012             /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         UNITED STATES DISTRICT JUDGE